MATILDA HUEBNER, APPELLEE, v. EMMA SESSEMAN, ADMINISTRATRIX, ET AL., APPELLANTS.

FILED OCTOBER 18, 1893. No. 5060.

1. **Executors and Administrators: FINAL ACCOUNT: PAYMENT OF CLAIMS NOT PRESENTED FOR ALLOWANCE.** In the final settlement of an estate of a decedent, whether originally in the county court or upon appeal in the district court, the administrator is entitled to no credit for payment of provable claims against the estate of his decedent, which, originating before his death, have not been presented or allowed as provided by law.

2. ———: FINDING UPON CONFLICTING EVIDENCE: REVIEW. The finding of the district court, upon conflicting evidence that the services of an attorney for which his bill had been rendered against the estate of a decedent were in fact rendered for another than the decedent, will not be reviewed by this court.

APPEAL from the district court of Douglas county. Heard below before DOANE, J.

The facts are stated in the opinion.

*B. G. Burbank,* for appellants:

The administrators should be allowed in their final account for money paid out of the funds of the estate to discharge debts legally due and owing from said estate, notwithstanding said claims were not filed and allowed by the probate judge before the final account of the administrators had been filed. (*Sims v. Sims*, 30 Miss., 341 ; *Haralson v. White*, 38 Miss., 178 ; *Hill v. Buford*, 9 Mo., 505 ; *Terrell v. Rowland*, 86 Ky., 79.)

*Congdon & Clarkson, contra:*

The evidence offered by the administrators and rejected by the court, under the exceptions to the allowance in their final account of such claims as had not been filed and allowed by the probate court, was properly rejected. (Secs. 214, 217, 223–226, ch. 23, Comp. Stats., 1887 ; *Millett v. Early*, 16 Neb., 268 ; Schouler, Administrators and Executors, sec. 420.)

Such claims not having been filed within the time originally fixed by the court, or within the one extension, were barred. (Schouler, Administrators and Executors, sec. 390, note 4, and cases ; 2 Wood, Limitations, sec. 188, note 5, and cases ; *Bunnell v. Post*, 25 Minn., 376.)

Neither the courts nor administrators have authority to allow claims against an estate after time fixed expires, unless time is extended in manner provided by statute. (*Mc-*

*Gee v. Atkinson*, 33 N. W. Rep. [Mich.], 737; *Nichols v. Shearon*, 4 S. W. Rep. [Ark.], 169.)

Administrators are not entitled to credit in their final accounts for debts paid which were not filed as claims and allowed by the probate court. (*Jacobs v. Morrow*, 21 Neb., 233.)

RYAN, C.

The final report of the administrators of the estate of Carl Sesseman, deceased, was filed in the probate court of Douglas county, Nebraska, on the 21st day of November, 1889, from which it appears that the assets of the estate just equaled the liabilities; that is, each was $10,745.78. The deceased, Carl Sesseman, left a will whereby he bequeathed to Matilda Huebner, appellee, $1,000, which will was duly probated and allowed in the said county court. The administrators appointed under said will (the executor named therein having failed to qualify) were William G. Bohn and Emma Sesseman, wife of the deceased, who gave bond as required by law, and entered upon the administration of the estate. To the above mentioned final report of the administrators of said estate there were filed exceptions by Matilda Huebner, and certain of said exceptions were sustained by the county judge, and a decree was entered in accordance with the finding by him made. Thereafter an appeal was taken to the district court of Douglas county from said decree. On the 22d day of May, 1891, said cause came on for hearing and a decree was entered therein, refusing the allowance of the sum of $5,544.43 claimed by the administrators aforesaid. To this finding exception was duly taken, and the case is now before this court for a settlement of the account of the administrators in the execution of their trust.

The main contention in this case resulted in the following finding: "4th. That said administrators have paid out of the assets of said estate, and claim credit therefor in said

Huebner v. Sesseman.

account the several sums set opposite the names of the re-
spective parties given below, whereas no such claims had
been allowed against said estate nor were due therefrom."
These claims were twenty-nine in number and for different
amounts, the aggregate of which was $5,176.46. It was
thereupon ordered and adjudged by the court that the pay-
ments made by said administrators, amounting to the sum
of $5,176.46, be disallowed in their said account, and that
said sum be deducted from the total credit asked for by
them in said account. The rejection of this sum of
$5,176.46 was for the reason as stated in the exception and
in the decree, that no such claims shown in said final report
to have been paid by said administrators had ever been
filed in the county court or allowed by the judge thereof.
Upon the trial in the district court the record disclosed the
following proceeding :

" The plaintiff offers the order limiting the time within
which the creditors should present their claims, which was
fixed at six months, and the order limiting the time in
which the estate should be settled, which was fixed at a
year, which order was made on the 24th day of February,
1888, which is admitted as correct by both parties. It is
admitted by both parties that due notice of the time and
place of presenting claims of creditors under this order was
given."

This was agreed to by counsel for the administrators, ex-
cept as to the time in which the creditors were finally to file
their claims, the said counsel claiming there was a subse-
quent order. It was conceded by the opposite counsel that
if there ever was any such subsequent order it might be
considered in proof. This devolved upon the administra-
tors the burden of showing the order extending the time
for filing claims, and as no proof was made of any such ex-
tension, it may fairly be presumed that none was made.

· Upon the trial of the case, W. G. Bohn, one of the
administrators, was called and sworn on the part of the

defendants.　Thereupon there was made an offer as fol-lows:

"The defendants now offer to prove by the witness on the stand that each of the claims against the estate of Carl Sesseman, as shown by the vouchers filed in the probate court of Douglas county, Nebraska, are valid, legal, and lawful claims or accounts against Carl Sesseman's estate, and they were such valid, legal, and lawful claims at the time of his death and at the time they were paid by the administrators of his estate, as shown by the vouchers on file in said court, and that no part or portion of the debt or debts as shown by the several vouchers had been paid, and all were due and payable.　The vouchers referred to are for all the claims credited to the administrators in their final report, except those claims allowed by the county court under date April 24, August 23, and November 23, 1888; said claims being rejected by the county court upon the hearing of the final account of the administrators.

"By the court : If you propose to show by the proofs that any of these claims which you now offer have been, any of them, presented and allowed by the county judge, or by the commissioners, you may do so.

"By Mr. Burbank: With reference to none of those which I now make the offer do I so contend.

"To each and every one of the vouchers offered, with the exception of such as may possibly be for legitimate expenses of the estate, such as funeral expenses or expenses properly paid to attorneys, or anything connected with the last sickness of the deceased, there is no objection, and to every and each of said vouchers which represent claims filed against the estate as due from Carl Sesseman in his lifetime, which said claims were not presented and allowed by the county judge, the plaintiff objects, as irrelevant and incompetent.

"By the court: The objection is sustained to those claims as against the estate, and which were not presented and allowed by the county judge.

"To which the defendants except."

Huebner v. Sesseman.

The above offer of the vouchers and receipts for money paid out by the administrators, together with the offer to prove that they were legitimate claims against the estate at the time they were paid, and were then due and owing, and that no part thereof had been paid, raises the only question of importance in this case, and that question is, whether or not it is an indispensable prerequisite that the judge of the county court allow such 'claims upon the hearing upon the administrators' final report.

Section 214, chapter 23, Compiled Statutes, is in the following language: "When letters testamentary or of administration shall be granted by any probate court, it shall be the duty of the probate judge to receive, examine, adjust, and allow all claims and demands of all persons against the deceased, giving the same notice as is required to be given by commissioners in this subdivision."

Section 217 provides that "The probate court shall allow such time as the circumstances of the case shall require for the creditors to present their claims to the commissioners for examination and allowance, which time shall not in the first instance exceed eighteen months nor be less than six months, and the time allowed shall be stated in the commission."

It is provided by section 226 of the same chapter, that "Every person having a claim against a deceased person proper to be allowed by the judge or commissioners, who shall not, after the giving of notice as required in the 214th section of this chapter, exhibit his claim to the judge or commissioners within the time limited by the court for that purpose, shall be forever barred from recovering such demand, or from setting off the same in any action whatever."

The appellants contend that notwithstanding the provisions of section 226, just quoted, the probate court in the first instance, and the district court on appeal, should have permitted the testimony offered to establish, as credits in

favor of the administrators, the several claims of which they had made payment without probate or allowance.

In support of this contention there is cited the case of *Sims v. Sims*, 30 Miss., 333. As the reference to this case seems to be with considerable confidence, it will be considered carefully, with the view to ascertaining whether or not it sustains the position contended for. The following language is quoted from the opinion itself: " The first question arose upon the rejection by the court below of certain claims against the estate which the executor had paid, and which had not been probated and allowed in due and usual form, and which were not proved to be valid claims, upon exceptions taken to them. It is clear that the court acted properly in refusing to allow these claims in the executor's final statement. The rule to be adduced from the provisions of the statutes in relation to the establishment of claims against the estate of deceased persons is plainly this: If the executor or administrator, having sufficient funds in his hands, pay a claim which is duly probated and allowed, *prima facie* he is entitled to an allowance for the same in his final account; but, if he pay a claim not probated and allowed, *prima facie* he acts in his own wrong, and he will not be entitled to an allowance for it, unless he adduces competent evidence before the court that the claim was just and valid, and that it remains unpaid at the time it was paid by him. Under this rule the claims numbers 20, 22, and 28, in the bill of exceptions, were properly rejected."

By reference to the several claims numbers 20, 22, and 28, it will be found that the first in order was for the payment of a note due one Underwood, and that the note was not paid by the executor at all. The testator was a member of the firm of Sims & Redus. After his death, Redus became a partner of the firm of Gates & Redus, to whom the business of the old firm was transferred. This house paid to the executor such portions of the effects of the old

firm as at various times came into its hands. This note was paid by this firm for the testator, and the receipt shows it. The executor only charges himself with such sums as his survivor may pay him, and in their settlements with him they doubtless deducted the sums thus paid in the discharge of this note. The executor never paid it, and the allowance to him of that amount would be a loss of that sum to the estate. There is not a particle of proof or reason why this note should be allowed. The language just used is, for the most part, a quotation from the brief of counsel, which purports to state the facts as to the separate vouchers. This also describes voucher number 22 as of the same nature as 20, which is described. As to voucher 28, referred to in the opinion, it seems that there was no evidence that it was ever paid. This condition of the claims under consideration by the court would manifestly render of little force the language quoted, to-wit: " That if he pay a claim not probated and allowed, *prima facie* he acts in his own wrong, and he will not be entitled to an allowance for it, unless he adduce competent evidence before the court that the claim was just and valid, and that it remained unpaid at the time it was paid by him." Obviously this language was not necessary in the disposition of the three claims which were under consideration by the court. This language was therefore *obiter dictum*, not at all necessary in the adjudication of the case under consideration. The only other question in that case decided was, whether or not the administrator was entitled to an allowance of certain indebtedness which was due from the decedent to himself during the decedent's lifetime. The opinion shows that the administrator had done all he could legally do to assert and adjust these claims by having them probated and allowed, and registered in the records of the probate court as claims against the estate, and they were therefore held provable. In this lies the distinction between that case and the one which we have under consideration.

The appellants also cite the case of *Haralson v. White. Executor*, 38 Miss., 178.   The credit which the executor sought to have allowed him in that case was because of the seizure and sale, upon execution on a judgment against the testator, of· a slave, with which of course the executor had been charged in his original account.   The court held that it was proper to show the sale aforesaid upon execution, and that it was unnecessary to· introduce in evidence the record leading up to and including the judgment upon which the execution was founded.   In our view, this case is not a warrant in any respect for the contention of the appellants.

The only other citation made by appellants is that of *Hill v. Buford*, 9 Mo., 869.   The syllabus fully states all that was decided in that case, and is, therefore, quoted at length.   It is as follows: "A, being bound as indorser for B on a note in bank, B executed an obligation with C as security, binding themselves to 'secure and keep safe the said A from all loss or damage which he might sustain' on account of such indorsement.   A died, and the note becoming due, E and F, his executors, renewed the note in their name, and had to pay the last note.   E had the amount paid by him allowed against A's estate.   It was not shown that F had had his claim allowed.   *Held*, That E and F, as executors of A, might recover for the whole amount paid by them, and the jury might infer that the payment by F was made for the estate of A."   While there is some language in the opinion that, isolated and alone, seems to favor the contention of the appellants, yet, taken in connection with the facts, it is clear that they afford but little countenance to the administrators in this case as to the allowance of their claims.

We think that the authorities to which we will now refer correctly state the law applicable to the facts of the case at bar.

In *Nichols v. Shearon*, 4 S. W. Rep. [Ark.], page 169, the following language occurs: "It is true the administrator's

settlements and the testimony taken show that he had paid several other debts which Shearon owed to wards for whom he had been guardian in his lifetime. These payments were doubtless made in good faith, but the administrator had no right to pay them as they were never proved up against the estate. The administrator seems to have acted upon the idea that the debts were incurred in a fiduciary capacity, and that this dispensed with the necessity of their being regularly probated. Shearon was a trustee for his wards as long as he lived, but when he died his indebtedness to the trust became a simple demand against his estate, which required to be sworn to, to be presented to the administrator within two years from the date of his letters, to be allowed, classified, and paid like any other debt he owed."

In *Bunnell v. Post*, 25 Minn., on page 380, is reported the following language of Berry, J., delivering the opinion of the court: " The appellant Bunnell is an executrix of the last will of Russell Post. Commissioners were duly appointed to receive, examine, and adjust all claims against the testator's estate. Proceeding duly and regularly in all respects they completed and filed a report. The appellant, while executrix, paid out of funds not belonging to the estate claims against the same to the amount of $5,000. These claims were valid against the estate and would have been properly allowable by the commissioners had they been presented. They never were presented and, of course, were never allowed. The appellant asks that her payments of the claims mentioned may be allowed to her in the settlement of her account as executrix. The general rule prescribed by statute is, that all claims against the estate of a deceased person must be presented to commissioners; otherwise they are barred. (Gen. Stats., ch. 53, sec. 14; *Commercial Bank of Kentucky v. Slater*, 21 Minn., 174.) To this rule some exceptions are made by statute, but none of the exceptions apply to this case. If an executor pays

claims against the estate of his testator, such as are required to be submitted to commissioners, there is certainly no reason why he should stand in any better position, as respects such claims, than the creditors to whom he paid them would have stood if he had not paid them. Before they can be allowed against the estate, either upon the settlement of the executor's account or otherwise, they must have been presented to and allowed by commissioners, or if disallowed by them, they must have been allowed upon the appeal provided by law. To hold otherwise would be to hold that the inflexible rule of law prescribed by the statute may be wholly disregarded at the pleasure of an executor. The reason for upholding the rule is just as strong where a claim has been paid by an executor as where it is retained by the original creditor. In both cases there is the same necessity that the claim shall be examined and adjusted by the authorized tribunal, and that it should be barred if not so examined and adjusted in the manner provided by law."

The language of our statute, sec. 226, ch. 23, Comp. Stats., imperatively provides that if there is a failure to exhibit a claim within the time limited by the court for that purpose, it shall be forever barred, either as a demand or as being used as a set-off in any action whatever. There is no matter of construction left by this statute enabling any one having a claim to establish it against an estate after the time fixed for that purpose. It is necessary to the speedy settlement of estates that claims should be filed within a reasonable time, and there exists in the probate court the right to fix that time. In the case at bar the time was fixed, and had long passed before any attempt was made to present the claims now in controversy. When such an attempt was made, it was by the administrators acting under a will of the decedent, of whom the law required a speedy and strict compliance with its provisions. In favor of such claimants there exists no equity which will not more strongly operate in favor of others who are charged with

no duty in respect to the speedy administration of the estate. To the administrators, therefore, it was proper that the statute should be applied with full force according to the very letter. The administrators having paid these claims without warrant of the court, and in violation of the provisions of the statute, were, after the time for filing and allowing claims, wholly without remedy, and the district court properly rejected the items aggregating a total of $5,176.46.

There was another contention as to the refusal of the court to allow an item of attorney's fees and for the attorney's expenses, amounting in the aggregate to $316. As to these items, the court found that they "are charges made for services rendered in various cases and matters which the court finds from the testimony that this estate was not a party to nor interested in; that said charges were not therefore proper to be made against this estate; and that the payments so made by said administrators were unauthorized and should not be allowed in their account." An examination of the evidence discloses that some of the items involved in this attorney's bill were services rendered before the death of the decedent; others were apparently rendered afterwards. In respect to the first class, of course, the observations already made would apply. In respect to all the items in this bill, it may be observed that the testimony leaves it in doubt whether the services were rendered for the decedent and his estate, or for the Bohn Manufacturing Company. They were in respect of certain claims which had existed in favor of the decedent, and which he had assigned to the Bohn Manufacturing Company as collateral security for items of a running account with said company. It was testified to by the attorney who filed the bill, that it was understood that the decedent was to pay all these expenses, and hold the Bohn Manufacturing Company harmless in respect thereof, and, in fact, that the decedent had so informed the attorney. As has already been

observed, the testimony is not clear whether the proper party chargeable with this indebtedness is the Bohn Manufacturing Company or the estate of the decedent. In this condition of the evidence the findings of fact quoted settle this proposition that the charges were made for services rendered in various cases and matters which the court finds, from the testimony, that this estate was not a party to, nor interested in. If the estate was not a party to, nor interested in, the litigation in respect of which these services were rendered for which these charges were made, of course the estate cannot be chargeable therewith; and on this consideration, as well as on account of the failure to file and probate the claims for services rendered before the death of the decedent, the district court properly rejected the amount of this bill, which the administrators claim they had already paid.

These observations dispose of the only contentions which arose upon the trial of this case, and as we fully concur with the views entertained by the district court, its judgment is

AFFIRMED.